IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORDAN URIAH JONES** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 22-CV-2662 |
| | : | |
| **REGINA McCLURE,** | : | |
| *Defendant* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                              OCTOBER 11 2022

Plaintiff Jordan Uriah Jones, proceeding *pro se,* filed a Complaint against the Director of Special Education Programs at the Penn-Delco School District, alleging claims under the Individuals with Disabilities in Education Act ("IDEA") and other related statutory, and constitutional claims. Jones seeks to proceed *in forma pauperis*. For the following reasons, the Jones is granted leave to proceed *in forma pauperis* and his Complaint is dismissed, *in part*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Jones is also granted the option of filing an amended complaint to attempt to cure the defects in those claims or advise the Court that he seeks to proceed only on the class that pass statutory screening.

**I.      FACTUAL ALLEGATIONS**

Jones alleges that he is in African American teenager[1] who has needed special education services since age seven. (Compl. (ECF No. 1-2) at 2.)[2] He further alleges that he entered the

---

[1]      Although it is not clear from the Complaint, given the dates when Jones allegedly attended school, he appears to be of legal age to bring this lawsuit.

[2]      The Court adopts the pagination supplied by the CM/ECF docketing system. Jones submitted both a handwritten complaint using a standard form and a typed complaint. (*See* ECF No. 1 & 1-2.) The Court construes the entire submission as the Complaint.

Penn-Delco School District in the third grade at Coeburn Elementary School and then moved to the Northley Middle School in the sixth grade. (*Id*.) He contends that when he was in the sixth grade, another student made "unfounded accusations" of sexual harassment against him. (*Id*.) Jones was allegedly handcuffed and searched without his parents first being notified. (*Id*. at 2-3.) Jones alleges that he was also mistakenly accused of theft that year when one of his Caucasian peers stole a hole punch from the school store but Jones was blamed for the theft and threatened with expulsion and suspension. (*Id*.) Jones asserts that in the Spring of 2014 or 2015, his parents learned that, in his Individual Education Plan ("IEP") "Penn-Delco officials scribed that [Jones] engaged in acts of sexual harassment and theft." (*Id*.) When his parents requested that the untrue information be removed, the request was allegedly refused by Defendant Regina McClure, the Director of Special Education at the Penn-Delco School District. (*Id*. at 5.) In the Spring of 2016-2017, Jones's parents allegedly learned that Jones's IEP stated that he was a "black boy with no father as the cause of his poor academic progress and conduct disorder." (*Id*.) Jones alleges that when his parents requested McClure to remove the information from the IEP, she refused to do so. (*Id*.)

Jones asserts that he began to suffer from "mental health problems" in the tenth grade. (*Id*. at 6.) In Fall 2019, he was transferred to the Delaware County Intermediate Unit's ("DCIU") Delaware County Academy. (*Id*.) Jones alleges that the DCIU school was not "equipped to handle students with emotional disorders," and that McClure transferred him there rather than to a school "that specializes in mental health and trauma education." (*Id*. at 13.)

Jones further alleges that at some point in 2019, he withdrew from the Penn-Delco School District and enrolled in a private online high school. (*Id*. at 27.) He states that McClure, together with an attorney who represented the School District, filed a "pendency placement motion with

the state that would adjudicate/assign [Jones] to 'Lifeworks,' a prison simulated academic program." (*Id*. at 11.) McClure then allegedly "reassigned" him to another prison simulated program through the DCIU. (*Id*.) Jones alleges that his parents were not consulted prior to either of these placements. (*Id*. at 11.) Jones alleges that despite his placement in prison simulated academic programs, he matriculated at cyber charter schools. (*Id*.) Jones further alleges that McClure, with the help of "the Delaware County Republican Board of Supervisors, [also] known as the War Board," would contact the charter schools to offer "misleading and falsified data" about Jones. (*Id*. at 20.)[3] For example, after McClure allegedly contacted the Achievement House Charter School, the school "disenrolled Jones without cause or parental notification." (*Id*. at 25.) He alleges that McClure "used school authority and War Board [] like powers to . . . entrap or remove his academic prospects." (*Id*. at 27.) He further alleges that "on each occasion [that he transferred to a new school] the school district, through her direction, attempted to guide [Jones] into prison simulated prospects or outcomes." (*Id*.) Jones alleges that over the course of four years, McClure has "disrupted" Jones's education at four different schools. (*Id*. at 20.) She also allegedly "conducted IEP meetings with school teams in the absence of Jones's parents, . . . change[d] and remove[d] portions of his academic programming without parental permissions," and failed to provide his parents with a "Notice of Recommendations Education Placement ("NOREP") or any other indicator that would notify the parents of such academic placement." (*Id*. at 10.)

## II.     STANDARD OF REVIEW

---

[3] In his Complaint, Jones includes an extensive discussion about the "War Board," including its history of oppression of minorities in Delaware County. (*Id*. at 14-22.) Jones alleges that McClure's husband is a member of the "War Board" and that she has used the powers of the War Board to "actively seek[] to destroy [Jones's] . . . access to education options. (*Id*. at 20.)

The Court grants Jones leave to proceed *in forma pauperis* because it appears that he is unable to pay the fees to commence this civil action. Consistent with 28 U.S.C. § 1915(e)(2)(B)(ii) courts are required to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Additionally, a court may dismiss a complaint based on an affirmative defense, such as the statute of limitations "when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). As Jones is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

**III.    DISCUSSION**

Here, Jones asserts claims against McClure under the IDEA, Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). Jones also purports to bring an equal protection claim and an invasion of privacy claim under 42 U.S.C. § 1983, and a state-law negligence claim.

### A.     IDEA Claims

Jones alleges that the Penn-Delco School District has denied him an education since he was seven.  "Under the IDEA, a state receiving federal educational funding must provide children within that state a free appropriate public education ("FAPE")'" *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 65 (3d Cir. 2010).  "The right to a FAPE ensures that students with special education needs receive the type of education that will 'prepare them for further education, employment, and independent living.'" *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717 (3d Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)).  "A school district provides a FAPE by designing and implementing an individualized instructional program set forth in an Individualized Education Plan (IEP), which must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729-30 (3d Cir. 2009) (internal quotations omitted).  Special needs children should be educated in the "least restrictive environment," meaning "one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled. . . ." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 535 (3d Cir. 1995).

Jones alleges that McClure "interfered" with his education after he withdrew from the Penn-Delco School District and enrolled in various private and charter schools, and that on at least one occasion, Jones was "disenrolled" from a school after the school was contacted by McClure. Jones also alleges that McClure filed pendency placement motions aimed at assigning Jones to a placement in prison simulated academic programs without parental consultation or consent. McClure is also alleged to have changed and removed academic programing from Jones's IEP and

made placement changes without providing the required notices to Jones's parents. Accepting Jones's allegations as true and drawing all inferences in his favor for purposes of statutory screening, the Court concludes that the IDEA claim against McClure passes statutory screening and will be served for a responsible pleading.[4]

### B. ADA and Section 504 Claims

Jones also asserts claims under Title II of the ADA and Section 504. These claims are analyzed together "because the substantive standards for determining liability are the same." *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019).[5] To state a plausible

---

[4] The Court notes that Jones alleges he withdrew from the Penn-Delco School district in 2019. He filed this Complaint originally in the District of Maryland on March 31, 2022. *See Jones v. McClure*, No. 22-777 (D. MD.). The IDEA provides a two-year statute of limitations for claims under the statute. 20 U.S.C. § 1415(f)(3)(C); *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 413 (3d Cir. 2010). The statute of limitations begins to run on the date the plaintiff knew or should have known of the action that forms the basis of the complaint. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 625 (3d Cir. 2015) (stating the complaint "must be presented within 2 years' of a parent's reasonable discovery date" of the action that forms the basis of the complaint). To determine this date, courts generally focus on "clear action or inaction by a school district sufficient to alert a reasonable parent that a child would not be appropriately accommodated." *McLean v. Eastampton School Dist.*, No. 19-11009, 2020 WL 728816, at *4 (D.N.J. Feb. 13, 2020); *see E.E. v. Ridgefield Park Bd. of Educ.*, No. 19-1221, 2020 WL 3097473, at *5 (D.N.J. June 11, 2020), *aff'd sub nom. Esposito v. Ridgefield Park Bd. of Educ.*, 856 F. App'x 367 (3d Cir. 2021) (stating "[a]pplication of the IDEA statute of limitations is a highly factual determination that a hearing officer must make on a case-by-case basis." (quoting *McLean*, 2020 WL 728816, at *4)). Any IDEA claims based on events that took place outside the two-year statute of limitations may be time-barred. However, because this is a highly factual determination, the Court expresses no opinion on this affirmative defense at the screening stage of the litigation since it is not clear on the face of the Complaint that the claim is implausible due to the statute of limitations.

[5] Section 504 of the RA provides:
> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).
> Section 202 of the ADA provides:
>
> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

claim under either Title II of the ADA or Section 504, a plaintiff must allege that: "(1) the student was disabled; (2) (s)he was "otherwise qualified" to participate in school activities; (3) the school district received federal financial assistance; and (4) the student was excluded from participation in or denied the benefits of the educational program receiving the funds, or was subject to discrimination under the program. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 274-75 (3d Cir. 2014).

Neither Title II of the ADA nor Section 504 provide for individual liability. *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals").

In addition, claims under Title II of the ADA and Section 504 are also subject to a two-year statute of limitations. *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) ("[W]e hold that the statute of limitations applicable to claims under Title II of the ADA and Section 504 of the RA is the statute of limitations for personal injury actions in the state in which the trial court sits"); *see also* 42 Pa. Cons. Stat. § 5524. "The general

---

42 U.S.C. § 12132.

rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir.2003).

Jones's claims under Title II of the ADA and Section 504 fail because he has only named an individual Defendant, McClure, and individuals are not subject to liability under those statutes. Moreover, any claim based on events that occurred prior to Jones withdrawing from the Penn-Delco School District may also be time barred. Jones has also failed to state plausible claims under Title II of the ADA and Section 504. Notably, he has not alleged facts that would support a finding that he was excluded from any alleged program, service, or benefit, *because of* his disability. Accordingly, his claims under Title II of the ADA and Section 504 will be dismissed without prejudice and with leave to amend since it is not clear that Jones can never allege timely plausible Title II ADA and Section 504 claims. Should Jones decide to file amended Title II ADA and Section 504 claims, he must (1) allege facts that support the elements of those claims (2) allege when the events that form the basis of the claims occurred; and (3) name an appropriate defendant.

### C. Equal Protection Claim under Section 1983

It appears that Jones may have also intended to assert a Fourteenth Amendment equal protection claim against McClure. Section 1983 is the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a plausible equal protection claim, a plaintiff must allege the existence of purposeful discrimination. *Blunt*, 767 F.3d at 273. Additionally, a plaintiff must allege that they "receiv[ed] different treatment from that received by other individuals similarly situated." *Id*. The notion that individuals be "similarly situated" is an

essential element to an equal protection claim under § 1983. *Id*. (citing *Startzell v. City of Phila*., 533 F.3d 183, 203 (3d Cir. 2008)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'" *Startzell*, 533 F.3d at 203.

In the Complaint, Jones fails to state a plausible equal protection claim. First, to the extent Jones raises § 1983 claims against McClure based on events that occurred prior to his withdraw from the Penn-Delco School District in 2019, those claims may be time-barred. Federal civil rights claims under § 1983 are also subject to the state statute of limitations for personal injury actions, which in Pennsylvania is two years, but may be equitably tolled. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 79-80 (3d Cir. 1989); 42 Pa. Cons. Stat. § 5524; *Singleton v. DA Philadelphia*, 411 F. App'x 470, 473 (3d Cir. 2011) (citing *Lake v. Arnold,* 232 F.3d 360, 370 n.9 (3d Cir. 2000)) (holding that the statute of limitation for a § 1983 claim may be equitably tolled where (1) a defendant actively misleads a plaintiff regarding his or her cause of action; (2) a plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) a plaintiff has timely asserted his or her claim in the wrong forum). Second, any claim based on McClure's conduct after Jones withdrew from the Penn-Delco School District is not plausible as currently pled because Jones has not alleged that he was treated differently than similarly situated students. *See Spring v. Allegany-Limestone Cent. Sch. Dist*., 655 F. App'x 25, 28 (2d Cir. 2016) (affirming dismissal of equal protection claims asserted on behalf of student where the complaint contained "no allegations regarding disparate treatment between [the student] and similarly situated students"). Accordingly, Jones's equal protection claim will be dismissed without prejudice. Should Jones decide to file an amended equal protection claim, he must (1) allege facts that support the elements of the claim, and (2) allege when the events that form the basis of the claim occurred.

D.      **Invasion of Privacy**

In the Complaint, Jones alleges that McClure invaded his privacy when she called the charter schools he attended after leaving the Penn-Delco School District "to offer misleading or falsified data" about him.  (Compl., ECF No. 1-2 at 20.)  The Court understands Jones to be asserting a constitutional invasion privacy claim under § 1983.[6]  "It is well established that the constitutional right to privacy protects two types of privacy interests:  'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.'" *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) (quoting *Whalen v. Roe*, 429 U.S. 589, 599-600 (1977)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 179 (3d Cir. 2005) ("'[T]he right not to have intimate facts concerning one's life disclosed without one's consent' is 'a venerable [right] whose constitutional significance we have recognized in the past.'" (quoting *Bartnicki v. Vopper*, 200 F.3d 109, 122 (3d Cir. 1999))).  Jones's claim against McClure falls under the first category.

To state a plausible Fourteenth Amendment invasion of privacy claim, the plaintiff must allege that the information is "within the individual's reasonable expectations of confidentiality." *C.N.*, 430 F.3d at 179.  "The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." *Id*.  If a privacy interest is implicated, then the Court must weigh various competing interests. *Id*.

> The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it

---

[6]     To the extent Jones asserts a claim under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, such a claim must be dismissed.  FERPA does not contain a private right of action.  *See Millington v. Temple Univ. Sch. of Dentistry*, No. 04-3965, 2006 WL 83447, at *3 (E.D. Pa. Jan. 9, 2006) ("Because FERPA does not contain an explicit private right of action, Millington may only proceed, if at all, under 42 U.S.C. § 1983.").  "Instead, it empowers the Secretary of Education to enforce FERPA by denying funding to offending institutions." *Id*. (citing 20 U.S.C. § 1232g(f)).

> does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*United States v. Westinghouse Electric Corp.*, 638 F.2d 570, 578 (3d Cir. 1980). Individuals have a right to privacy in their medical records. *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001). However, there is no right to privacy in "criminal records, including police reports, indictments, guilty verdicts, and guilty pleas" as those documents "are inherently public—not private—documents and are thus beyond the purview of the Due Process Clause." *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009).

Jones has not stated a plausible Fourteenth Amendment invasion of privacy claim. He has alleged only that McClure offered false and misleading data to charter schools. He did not specify what the data was disclosed to the schools, whether he had a reasonable expectation of privacy in what was disclosed, and when this occurred. Jones's Fourteenth Amendment invasion of privacy claim will therefore be dismissed. Should Jones decide to file an amended invasion of privacy claim, he must (1) allege facts that support the elements of the claim, and (2) allege when the events that form the basis of the claim occurred.

### E. Negligence

Jones also asserts a negligence claim against McClure for contacting the schools he attended after he withdrew from the Penn-Delco School District and offering to provide them data on Jones, which caused an "interference" with his education at those schools. To state a claim of negligence under Pennsylvania law, a plaintiff must allege: "(1) a duty or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and

11

(4) actual loss or damage resulting to the interests of another." *Vasquez v. Wingard*, 847 F. App'x 108, 111 (3d Cir. 2021) (quoting *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1366 (3d Cir. 1993)). At this juncture, Jones has stated a plausible negligence claim against McClure. This claim passes statutory screening and will be served for a responsive pleading.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Jones's Motion to *Proceed In Forma Pauperis* and dismiss his Complaint, *in part*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Jones's claims under the Title II of the ADA, Section 504 and Section 1983 are dismissed, without prejudice. Jones's IDEA and negligence claims pass statutory screening and will be served for a responsible pleading. Because the Court cannot determine, at this time, whether Jones cannot cure the defects in the claims that have been dismissed without prejudice, and considering Jones's *pro se* status, he is granted the option of filing an amended complaint to attempt to cure the defects in those claims or advise the Court that he seeks to proceed only on the class that pass statutory screening.

An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.